**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| ANTHONY JOSEPH LOSASSO, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:15-CV-00858-CAN |
| | § | |
| v. | § | |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits [Dkt 1]. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the Administrative Record, the Court finds that the Commissioner's decision should be **REMANDED**.

**BACKGROUND**

**I.** *Procedural History Of The Case*

On June 4, 2013, Anthony Joseph Losasso ("Plaintiff") filed his application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §1382c(a)(3) [TR at 411-14]. In his application, Plaintiff alleged an onset of disability date of December 31, 2012. *Id.* Plaintiff's application was initially denied by notice on September 27, 2013, and again upon reconsideration on December 30, 2013, after which Plaintiff requested a hearing before an administrative law judge ("ALJ"). *Id*. at 361-64, 366-75. The ALJ conducted a hearing on December 3, 2014 ("Hearing"), and heard testimony from Plaintiff and

Vocational Expert Sugi Komarov ("Ms. Komarov" or "VE"). *Id*. at 1-40. Plaintiff was represented

by counsel at Hearing. *Id*. On February 20, 2015, the ALJ issued his decision denying benefits,

and found Plaintiff not disabled at step five of the prescribed sequential evaluation process

(discussed *infra*). *Id*. at 61-81. Plaintiff requested that the Appeals Council review the ALJ's

decision, and on November 2, 2015, the Appeals Council denied Plaintiff's request for review,

making the decision of the ALJ the final decision of the Commissioner. *Id*. at 41-48, 56-60.

On December 22, 2015, Plaintiff filed his Complaint with this Court [Dkt. 1]. On

March 4, 2016, the Administrative Record was received from the Social Security Administration

("SSA") [Dkt. 9]. On March 7, 2016, this case was assigned to the undersigned by consent of all

Parties for further proceedings and entry of judgment [Dkt. 10]. Plaintiff filed his Brief on

April 4, 2016 [Dkt. 13]. On June 3, 2016, the Commissioner filed her Brief in Support of the

Commissioner's Decision [Dkt. 14].

## II.    *Statement Of Relevant Facts*

### 1.    *Age, Education, and Work Experience*

Plaintiff was born on April 15, 1969, making him forty-three years old at the alleged

disability onset date (and classified at all relevant times as a "younger person") [TR at 75, 411].

*See* 20 C.F.R. § 416.963(c). Plaintiff asserts that his onset date of disability is December 31, 2012.

*Id.* at 7, 411. Plaintiff has at least a high school education. *Id.* at 12, 75. Plaintiff has past relevant

work experience as a numerical control machine operator. *Id.* at 26-27, 75.

## 2. *Relevant Medical Record Evidence*

### a. *Physical Health Treatment*

Plaintiff has a lengthy medical history of difficulties with diabetes and complications from his diabetes; however, the problems became worse in October 2012 when he sliced his foot on a sliding glass door and the wound did not heal.[1]  On January 14, 2013, Plaintiff sought medical treatment from Comprehensive Wound Center for a chronic ulcer on the great right toe after it became painful, red, and swollen [TR at 635-36].  The Comprehensive Wound Center noted Plaintiff had a decrease in peripheral sensation.  *Id.* at 640.  The wound did not begin to heal properly until a month later; on February 18, 2013, Comprehensive Wound Center noted that Plaintiff's ulcer was much smaller.  *Id.* at 695-718.  On April 8, 2013, Comprehensive Wound Center noted that Plaintiff had an MRI which confirmed osteomyelitis of the distal and proximal phalanx.  *Id.* at 821.  Plaintiff was also noted to have a complete loss of pain sensation distally.  *Id.* at 825.

On April 16, 2013, Plaintiff's right big toe was amputated due to osteomyelitis.  *Id.* at 625.  By May 23, 2013, Plaintiff's foot appeared completely healed.  *Id.* at 560.  However, Plaintiff still sought treatment for numbing and tingling of his foot through the ankle.  *Id.* at 832-37.  Plaintiff subsequently (on July 29, 2013) was diagnosed with moderate, demyelinating and axonal, sensory motor neuropathy.  *Id.* at 838.  On June 30, 2015, Plaintiff underwent surgery for a resection of left first metatarsal after a diagnosis of osteomyelitis. *Id.* at 210, 229.  A month after the second amputation on his left foot, Plaintiff was admitted to the Denton Regional Medical Center on July 29, 2015 with a left foot MSSA infection.  *Id.* at 89.  More bone was removed from

---

[1] Plaintiff also complains of a mental impairment; however, Plaintiff appeals only the ALJ's treatment of Dr. Ambavaram's assessment of Plaintiff's physical impairments.  Accordingly, the Court limits its recitation of the facts to the relevant medical history of Plaintiff's physical impairments.

the previously amputated toe and a revisional primary closure was attempted. *Id.* at 90. At the

time of surgery, Plaintiff complained of numbness. *Id.* at 91.

#### b.    *Examining Source – Dr. Tavarekere*

On November 20, 2013, Anuradha Tavarekere, M.D. examined Plaintiff. *Id.* at 858-60.

Dr. Tavarekere noted Plaintiff's use of a cane. *Id.* at 859. Dr. Tavarekere noted a left leg limp, an

inability to sustain standing due to unsteadiness, and slightly reduced (4/5) motor strength in the

lower extremities. *Id.* at 860. Dr. Tavarekere noted normal upper extremities, normal hand grip,

and normal fine finger movements, noting that Plaintiff "has ability to handle small objects and

button clothing." *Id.* However, Plaintiff had decreased deep tendon reflexes in all extremities. *Id.*

#### c.    *State Agency – Drs. Kenney and Spoor*

State agency consultants, Dr. Charles Kenney and Dr. Scott Spoor, also reviewed

Plaintiff's records and provided statements regarding his impairments. Dr. Kenney opined

Plaintiff's osteomyelitis, periostitis and other infections involving bone and peripheral neuropathy

constituted sever impairments, but that Plaintiff could still sustain light work. *Id*. at 331-41. Dr.

Spoor, upon reconsideration, affirmed the opinion of Dr. Kenney, but added a limitation that

Plaintiff could stand or walk for only three hours in an eight hour day and could frequently stoop.

*Id*. at 344-57.

#### d.    *Treating Source – Dr. Ambavaram*

Plaintiff started treatment with Sukanya Ambavaram, M.D. on February 21, 2014. *Id.* at

884. At that time, Dr. Ambavaram noted diabetes, hypertension, neuropathy treated with Lyrica,

an amputated right big toe, and obesity. *Id.* at 885-86. Plaintiff's gait and stance was abnormal,

and Plaintiff was using a walker. *Id.* at 885. Dr. Ambavaram noted that Plaintiff was "not taking

medications as instructed" for diabetes and recommended diet control and increased physical activity, specifically "regular moderate exercise." *Id.* at 885-86.

On March 5, 2014, Dr. Ambavaram completed a Medical Release/Physicians Statement wherein she opined on the limitations imposed by Plaintiff's diabetes and polyneuropathy. *Id.* at 902-04. Dr. Ambavaram opined that Plaintiff was limited to sitting for four hours and standing or walking for a total of four hours in an eight-hour day. *Id.* at 902. Dr. Ambavaram also opined that Plaintiff could lift, carry, push and pull for four hours and climb, kneel and stoop for two hours in an eight-hour day. *Id.* Dr. Ambavaram opined that Plaintiff's disability was not permanent but he expected it to last more than six months. *Id.*

On October 7, 2014, Dr. Ambavaram completed a physical capacity evaluation form for Plaintiff detailing Plaintiff's limitations as a result of his "severe diabetic polyneuropathy" and hypertension. *Id.* at 995-96. Dr. Ambavaram indicated that Plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and walk "less than 2 hrs." per work day, sit for four hours per work day, sit for no more than forty-five minutes at a time, and stand for no more than ten minutes at a time. *Id.* at 995. Dr. Ambavaram opined that Plaintiff must be able to change from sitting to standing at will, and that he was unable to climb stairs or ladders. *Id.* at 996. She also found that Plaintiff could only occasionally ("from very little up to 1/3 of an 8 hour day") twist, stoop, or crouch. *Id.* at 996. Dr. Ambavaram stated that Plaintiff has "no fine motor skills" and Plaintiff's impairments would cause him to be absent from work more than four days per month. *Id.* Plaintiff's fingering, pushing/pulling, and handling would be affected by his impairments, according to Dr. Ambavaram. *Id.* Finally, Dr. Ambavaram opined that the limitations described within her assessment would last a year or more. *Id.*

### 3. Hearing Testimony

#### a. Plaintiff's Testimony

At Hearing, Plaintiff testified about his functional limitations. In October 2012, Plaintiff cut his foot, which became infected and "really painful" by December 31, 2012. *Id.* at 10. Plaintiff testified that, as a result of his neuropathy, he cannot feel anything from the knees down, but he "get[s] pain going up [his] legs as the day goes on." *Id.* at 14. This pain makes it hard for Plaintiff to fall asleep. *Id.* at 17. He can stand for ten to fifteen minutes before he needs to lie or sit down. *Id.* at 15. Walking 100 feet to his mailbox is often too much for Plaintiff. *Id.* Plaintiff has noticed that his neuropathy is getting worse—especially in his hands—and that he often has trouble with picking up and dropping items. *Id.* at 16. Plaintiff is on medication that makes him confused, dizzy, and lightheaded. *Id.* at 17. Plaintiff uses a cane to walk. *Id.* at 18. He is unable to cook a meal if it takes more than ten to fifteen minutes to prepare. *Id.* at 21. Plaintiff is unable to close his eyes in a shower without losing his balance. *Id.* at 23.

#### b. Vocational Expert Testimony

Ms. Komarov testified as a vocational expert at the Hearing [TR at 26-38]. The ALJ asked the VE to describe Plaintiff's work history, and the VE responded that Plaintiff has past work as a numerical control-machine operator (DOT 609.362-010, medium, skilled, SVP 5). *Id.* at 27. The ALJ then asked Ms. Komarov:

So, let me ask you some hypothetical questions. Let's assume we have a worker who is the same age, education, and has the same past work experience as Mr. Losasso. Assume, if you would, that he can lift and carry 20 pounds occasionally, 10 pounds frequently. That he can sit for six out of eight hours in a normal workday; and stand and walk for three out of eight hours in a normal workday. Assume that he can perform each of the postural maneuvers occasionally, and that he requires the use of a cane when he's walking. It would appear that he's not going to be able to do his past work. . . . [C]an you identify other work that might be responsive to this hypothetical?

*Id.* at 27. Ms. Komarov testified that there are other jobs that exist in the national economy that such a hypothetical individual could perform including: food-beverage order clerk, document preparer, and addresser. *Id.* at 27-28. In response to a hypothetical posed by the ALJ, Ms. Komarov testified that an additional limitation requiring the individual to be absent two or more days per month would eliminate competitive employment. *Id.* at 29.

**III.** *Findings Of The ALJ*

    *1.* *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity ("RFC"), age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the RFC to engage in work available in the national economy. 20 C.F.R. § 404.1520(f).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

### 2. *ALJ's Disability Determination*

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2012, the alleged disability onset date [TR at 66]. At step two, the ALJ determined that Plaintiff had the severe impairments of "obesity in combination with neuropathy; peripheral neuropathy; uncontrolled diabetes mellitus and status post right big toe amputation." *Id.* at 67-69. At step three, the ALJ found that these impairments, singly or in combination, did not satisfy the requirements for a presumptive finding of disability under the Act. *Id*. at 69-70. At step four, the ALJ found Plaintiff had the RFC to perform "a reduced range of light work."[2] *Id.* at 73. Specifically, the ALJ found:

> [Plaintiff] has the [RFC] to lift and carry twenty pounds occasionally and ten pounds frequently, to stand or walk for three hours of an eight-hour day and to sit for six of eight hours in a day. He can occasionally climb, balance, stoop, kneel, crouch and crawl; he requires the use of a cane for ambulation and he is able to use his bilateral upper extremities for frequent but not constant reaching, handling and grasping.

---

[2] Each of the job classifications in the national economy is broken down into an exertion level: Sedentary, Light, Medium, Heavy, and Very Heavy. 20 C.F.R. § 404.1567. Light work is defined as follows:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.

*Id*. at 70. Continuing the step four analysis, the ALJ then determined that Plaintiff was unable to perform any of his past relevant work. *Id.* at 75. At step-five, based on Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ found there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as food and beverage order clerk, document preparer, and addresser. *Id.* at 76. Thus, the ALJ concluded Plaintiff was not disabled from December 31, 2012 to February 20, 2015. *Id*. at 77.

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff contends that the ALJ erred by not considering the 20 C.F.R. § 404.1527(c) factors and by applying incorrect legal standards to the opinions of his treating physician, Dr. Ambavaram.

### 1.    *Requirements for Giving Weight to Treating Physician*

The treating physician rule provides that the opinion of a claimant's treating physician is entitled to great weight. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995). Indeed, a treating physician's opinion regarding the severity and nature of a plaintiff's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).[3] But the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" so long as good cause is shown. *Newton*, 209 F.3d at 456. As stated clearly in *Newton*:

> Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. [T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

---

[3] 20 C.F.R. § 404.1527 has been revised several times since the Fifth Circuit's opinions in *Newton* and in *Martinez* and the Court's reference to subsection (d)(2) refers to the factors now present at subsection (c)(2) of 20 C.F.R. § 404.1527. *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006), *with* 20 C.F.R. § 404.1527 (Aug. 24, 2012).

*Newton*, 209 F.3d at 455-56 (internal citations and quotation marks omitted); *see, e.g.*, *Greenspan*, 38 F.3d at 237.

> ## 2. *Factors to be Considered Before Declining to Give Treating Physicians' Opinions Controlling Weight*

SSA regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *See* 20 C.F.R. § 404.1527(c)(2). Section 404.1527(c) requires the ALJ to consider specific factors to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." *Id.* Specifically, the ALJ must consider: (1) examining relationship; (2) treatment relationship; (3) supportability of the medical opinion; (4) consistency; (5) specialization of the physician; and (6) other factors. *See* § 404.1527(c) (listing factors to consider). The ALJ must consider all six of these factors if "controlling weight" is not given to a treating physician's medical opinions. *Id.* ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion); *Newton*, 209 F.3d at 456 (stating the Fifth Circuit requires consideration of each of the 20 C.F.R. § 404.1527(c)(2) factors).

Notably, in *Newton*, the United States Court of Appeals for the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. But, in subsequent decisions construing *Newton*, the Fifth Circuit has explained that "[t]he Newton court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there is competing first-hand medical evidence (i.e., competing opinions of treating or examining physicians), and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another, the ALJ need not

necessarily set forth an analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id*. at 466-67.

### 3. *Weight Given to Dr. Ambavaram*

The ALJ determined that Plaintiff has the RFC to perform a "reduced range of light work," and "has the [RFC] to lift and carry twenty pounds occasionally and ten pounds frequently, to stand or walk for three hours of an eight-hour day and to sit for six of eight hours in a day. He can occasionally climb, balance, stoop, kneel, crouch and crawl; he requires the use of a cane for ambulation and he is able to use his bilateral upper extremities for frequent but not constant reaching, handling and grasping" [TR at 70, 73]. Plaintiff contends that in making this determination the ALJ applied incorrect legal standards to the opinions of Plaintiff's treating physician, Dr. Ambavaram.

On March 5, 2014, Dr. Ambavaram completed a Medical Release/Physicians Statement wherein she opined on the limitations imposed by Plaintiff's diabetes and polyneuropathy. *Id.* at 902-04. Dr. Ambavaram opined that Plaintiff was limited to sitting for four hours and standing or walking for a total of four hours in an eight-hour day. *Id.* at 902. Dr. Ambavaram also opined that Plaintiff could lift, carry, push and pull for four hours and climb, kneel and stoop for two hours in an eight-hour day. *Id.* Dr. Ambavaram opined that Plaintiff's disability was not permanent but expected it to last more than six months. *Id.* On October 7, 2014, Dr. Ambavaram completed a physical capacity evaluation form for Plaintiff detailing Plaintiff's limitations as a result of his "severe diabetic polyneuropathy" and hypertension. *Id.* at 995-96. Dr. Ambavaram indicated that Plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and walk "less than 2 hrs." per work day, sit for four hours per work day, sit for no more than forty-five minutes at a time, and stand for no more than ten minutes at a time. *Id.* at 995. Dr.

Ambavaram opined that Plaintiff must be able to change from sitting to standing at will, and that he was unable to climb stairs or ladders. *Id.* at 996. She also found that Plaintiff could only occasionally ("from very little up to 1/3 of an 8 hour day") twist, stoop, or crouch. *Id.* at 996. Dr. Ambavaram stated that Plaintiff has "no fine motor skills" and Plaintiff's impairments would cause him to be absent from work more than four days per month. *Id.* Plaintiff's fingering, pushing/pulling, and handling would be affected by his impairments, according to Dr. Ambavaram. *Id.* Finally, Dr. Ambavaram opined that the limitations described within her assessment would last a year or more. *Id.*

The ALJ referenced Dr. Ambavaram in his Notice of Decision, recognizing that Dr. Ambavaram had completed a medical release statement and a physical RFC statement. The ALJ summarized the medical release statement, noting that Dr. Ambavaram found that Plaintiff was able to work only part-time for ten hours per week; that Plaintiff was limited to sitting for four hours and standing or walking for a total of four hours in an eight-hour day; and that Plaintiff could lift, carry, push and pull for four hours, and climb, kneel and stoop for two hours in an eight hour day. *Id.* at 74. The ALJ also summarized Dr. Ambavaram's physical RFC statement, noting that Dr. Ambavaram found that Plaintiff was able to perform work at the light exertional level except he could stand or walk for less than two hours and sit for six hours of an eight-hour day; that Plaintiff would need to change positions after forty-five minutes of sitting and ten minutes of standing; that Plaintiff could only occasionally twist, stoop, and crouch but never climb; that Plaintiff would miss more than four days of work per month due to his impairments; and that Plaintiff would have difficulty fingering, handling, pushing and pulling. *Id.* The ALJ accorded Dr. Ambavaram's March 2014 medical release statement "little weight" and her October 2014 physical RFC statement "some weight." *Id.* The only explanation given for the ALJ's rejection

of Dr. Ambavaram's opinions related to Plaintiff's physical impairments was "Physical examinations showed decreased sensation in his extremities but his strength was generally good and his gait was stable with his cane. His treating provider noted that he was performing inadequate physical activity and a consultative examiner reported that his handgrip and fine finger movement in his upper extremities was good." *Id.* Conversely, the ALJ accorded "substantial weight" to the testimony of nonexamining physician Dr. Scott Spoor to find Plaintiff's physical impairments non-severe. *Id.* To reiterate, the ALJ determined that Plaintiff has the RFC to perform a "reduced range of light work," and "has the [RFC] to lift and carry twenty pounds occasionally and ten pounds frequently, to stand or walk for three hours of an eight-hour day and to sit for six of eight hours in a day. He can occasionally climb, balance, stoop, kneel, crouch and crawl; he requires the use of a cane for ambulation and he is able to use his bilateral upper extremities for frequent but not constant reaching, handling and grasping." *Id.* at 70, 73. Accordingly, the ALJ did not incorporate all of Dr. Abmavaram's medical findings and opinions into his RFC assessment. Specifically, the ALJ did not incorporate Dr. Ambavaram's opinion that (1) Plaintiff was only able to work part-time for ten hours per week; (2) stand and walk less than two hours during an eight-hour day; (3) sit for four hours; (4) change position after fort-five minutes of sitting and ten minutes of standing; (5) Plaintiff's fingering and handling would be affected by his impairment; and (6) Plaintiff would miss more than four days per month because of his impairments or treatments. This failure to incorporate each of Dr. Ambavaram's limitations is the subject of Plaintiff's appeal:

Critically, the ALJ's analysis in this case fails entirely to acknowledge the consistency between Dr. Ambavaram's two opinions, despite slight differences between the two which the ALJ characterized as "substantial change." For instance, both opinions assigned significant standing/walking/sitting limitations such that Plaintiff would be incapable of working full time, both established greater postural limitations than those set forth in the ALJ's RFC, and both describe Plaintiff as being likely to miss work approximately 4 days per month due to exacerbation's [sic] of his illness. The ALJ's failure to consider the consistency between these opinions is contrary to 20 C.F.R. § 404.1527(c)(4).

[Dkt. 13 at 11].

Here, the Commissioner contends no analysis of the relevant factors was required because "Dr. Ambavaram's October 2014 assessment was contradicted not only by [Dr.] Tavarakere's November 2013 examination report but her own treatment records" [Dkt. 14 at 10]. When an ALJ's decision is not fully favorable, the ALJ's "[N]otice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *1, 5.[4] *See Mills v. Colvin*, No. 4:14-CV-959, 2015 WL 12570839, at *13 (S.D. Tex. Oct. 19, 2015) ("If a treating physician's opinion is not given controlling weight, 'the ALJ must explain in the decision the weight given to the opinions of a nonexamining physician, as the ALJ must do for any opinions for treating sources, nontreating sources, and other nonexamining sources); *Cline v. Astrue*, 577 F. Supp. 2d 835, 844 (N.D. Tex. 2008) ("Unless controlling weight is given to a treating source's opinion . . . the Commissioner considers six factors in deciding the weight given to each medical opinion . . . .").

The Court now turns to the Commissioner's argument that Dr. Ambavaram's October 2014 assessment was contradicted by Dr. Tavarakere's November 2013 examination report. The ALJ

---

[4] While the Social Security Administration's rulings are not binding on the Court, the Fifth Circuit has frequently relied upon the rulings in evaluating ALJ's decisions. *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001).

found Dr. Ambavaram's opinion that Plaintiff would have difficulty fingering and handling should only be given some weight because "a consultative examiner reported that his handgrip and fine finger movement in his upper extremities was [sic] good" [TR at 74]. The Fifth Circuit has held that "absent reliable medical evidence from a treating *or examining* physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [the regulations]." *Newton*, 209 F.3d at 453 (first emphasis added). Although Dr. Tavaekere was a consulting physician, he actually examined Plaintiff and is therefore an examining physician. *See Ranes v. Astrue*, 2009 WL 2486037, at *7, 10 (N.D. Tex. Aug.14, 2009) (Fitzwater, C.J.) (stating that a consulting physician who examines plaintiff once is a consulting examiner); *Benton ex rel. Benton v. Astrue*, No. 3:12-CV-0874-D, 2012 WL 5451819, at *5 (N.D. Tex. Nov. 8, 2012) (same). Dr. Tavarakere found that Plaintiff's "[f]ine finger movements are normal. [He] [h]as the ability to handle small objects and button clothing" [TR at 860]. This medical finding contradicts Dr. Ambavaram's finding that Plaintiff's impairments would affect his "fingering (fine manipulation). *Id.* at 996. Because Dr. Ambavaram's opinion that Plaintiff's fingering would be affected by his impairments is controverted by an examining physician's opinion, the ALJ was not required to evaluate the regulatory criteria when rejecting this limitation and/or opinion. *See Berry v. Astrue*, No. 3:11-CV-02817-L BH, 2013 WL 524331, at *19 (N.D. Tex. Jan. 25, 2013), *report and recommendation adopted*, No. 3:11-CV-2817-L-BH, 2013 WL 540587 (N.D. Tex. Feb. 13, 2013) ("[ALJ] could also reject [the treating physician's] opinions about [plaintiff's] allegedly disabling back pain without performing a factor by factor analysis because there was competing first-hand medical evidence . . . that supported a contrary conclusion."); *Sibley v. Astrue*, 2011 WL 7274895, at *10 (E.D. La. Dec. 15, 2011) (holding that ALJ did not err in failing to perform *Newton* analysis

where reliable evidence from examining psychologist controverted treating physician's opinion), *report and recommendation adopted*, 2012 WL 441137, at \*1 (E.D. La. Feb.10, 2012); *Naquin v. Astrue*, 2009 WL 928502, at \*12 (E.D. La. Apr. 3, 2009) (same). Accordingly, the ALJ did not err when he did not expressly consider the six Section 1527(c)(2) factors as to Dr. Ambavaram's opinion that Plaintiff would have difficulty fingering and handling.

However, this is not the only medical finding and/or opinion of Dr. Ambavaram that the ALJ excluded from his RFC assessment; as discussed above, the ALJ also did not incorporate Dr. Ambavaram's opinion that Plaintiff was only able to work part-time for ten hours per week, stand and walk less than two hours during an eight-hour day, sit for four hours, change position after fort-five minutes of sitting and ten minutes of standing, and Plaintiff would miss more than four days per month because of his impairments or treatments.

To the extent Defendant argues no need exists to analyze the factors as to these remaining excluded limitations because Dr. Ambavaram's October 2014 assessment was contradicted by her own treatment records, the Court notes that inconsistencies between Dr. Ambavaram's own opinions do not fall within the competing first-hand medical evidence exception" recognized in *Newton*. *Perry v. Colvin*, No. 13-CV-2252-P, 2015 WL 5458925, at \*9 (N.D. Tex. Sept. 17, 2015) ("Inconsistencies within a treating physician's own opinions do not justify bypassing the detailed analysis of the six factors."); *Howeth v. Colvin*, No. 12–CV–0979–P, 2014 WL 696471, at \*8 (N.D. Tex. Feb. 24, 2014) ("The competing first-hand medical evidence exception to avoiding the detailed analysis of the six § 1527(c)(2) factors does not contemplate using other evidence from the same physician. To the contrary, use of such evidence is fully anticipated within two of the six required factors—support for the physician's opinions in the medical evidence of record and consistency of the opinions with the record as a whole."). Accordingly, to the extent the ALJ

relied on inconsistencies between Dr. Ambavaram's own opinions in making his RFC assessment, such inconsistencies did not relieve the ALJ of his obligation to set out a detailed analysis of the six Section 1527(c)(2) factors.

The ALJ's failure to consider the Section 404.1527(c)(2) factors when rejecting several of Dr. Ambavaram's limitations and/or opinions was prejudicial error. *See Johnson v. Colvin*, No. 3:16-CV-69, 2017 WL 86139 (N.D. Tex. Jan. 10, 2017); *Gullette v. Colvin*, No. 3:14-CV-1497, 2015 WL 4660968 (N.D. Tex. Aug. 6, 2015); *Singleton v. Astrue*, No. 3:11-CV-2332, 2013 WL 460066 (N.D. Tex. Feb. 7, 2013). It is the ALJ's responsibility to weigh the evidence, and the Court is unable to say what the ALJ would have done had he properly weighed all relevant evidence of record. The opinions expressed by Dr. Ambavaram undoubtedly include significant limitations beyond those that the ALJ recognized in determining Plaintiff's RFC. Had the ALJ given proper consideration to Dr. Ambavaram, the ALJ might have reached a different decision. Therefore, the case should be remanded for reconsideration of Dr. Ambavaram's opinions under the relevant factors.

## CONCLUSION

For the foregoing reasons, the Court finds that the decision to deny disability benefits to Plaintiff is **REMANDED** to the Commissioner for further deliberation in accordance with this decision.

. **SIGNED this 24th day of March, 2017.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE